CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 11 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number 7:11-CV-00483
(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely. The court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly or type.

I. PARTIES

A. Plaintiff:

1. a. Ophelia Azriel De'lonta        b. 1014174
   (name)                                (inmate number)

   c. Buckingham Correctional Center
      (address)

   P.O. Box 430  Dillwyn, Va 23936

Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.

B. Defendant(s): See Attachment-

    Plaintiff is advised that only persons acting under color of state law are proper defendants under section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under section 1983. In addition, liability under section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens and sheriffs are not liable under section 1983 just because they supervise persons who may have violated your rights. These persons are liable only if they were personally involved in the alleged deprivation. In addition, prisons, jails, and departments within an institution are not persons under section 1983.

1. a. _____    b. _____
        (name)                                 (title/job description)

     c. _____
        (address)

        _____

2. a. _____    b. _____
        (name)                                   (title/job description)

     c. _____
        (address)

        _____

3. a. _____    b. _____
        (name)                                   (title/job description)

     c. _____
        (address)

        _____

If there are additional defendants, please list them on a separate sheet of paper. Provide all identifying information for each defendant named.

Plaintiff MUST provide an address for defendant(s) in order for the court to serve the complaint. If the plaintiff does not provide an address for a defendant, that person may be dismissed as a party to this action.

In addition, plaintiff MUST provide a copy of the completed complaint and any attachments for EACH defendant named.

## II. PREVIOUS LAWSUITS

A. Have you ever begun other lawsuits in any state or federal court relating to your imprisonment? Yes [X] No [ ]

B. If your answer to A is YES: You must describe any lawsuit, whether currently pending or closed, in the space below. [If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.]

1.  Parties to previous lawsuit:

Plaintiff (s) _____ **SEE ATTACHMENT** _____

Defendant (s) _____

_____

2.  Court [if federal court, name the district; if state court, name the county]: _____

_____

3.  Date lawsuit filed: _____

4.  Docket number: _____

5.  Name of Judge to whom case was assigned:

_____

6.  Disposition [Was case dismissed? Appealed? Is it still pending?  What relief was granted, if any?]:

_____

## III. GRIEVANCE PROCEDURE

A.  At what institution did the events concerning your current complaint take place? _____

**Buckingham Correctional Center** _____

B.  Does the institution listed in A have a grievance procedure?  Yes [ X ] No [ ]

C.  If your answer to B is YES:

1.  Did you file a grievance based on this complaint?  Yes [ X ] No [ ]

2.  If so, where and when: _____ **Buckingham Corr. Ctr. Apirl 15th 2011**

3.  What was the result? _____ **Unfounded** _____

_____

4.  Did you appeal?  Yes [X] No [ ]

## PREVIOUS LAWSUITS

PLAINTIFF- OPHELIA DE'LONTA,

DEFENDANT- ANGELONE,et'al.

WESTERN DISTRICT - 2003
DOCKET NO. 330.F.3d 630
JUDGE ASSIGNED- TURK
DISPOSITION- SETTLEMENT

PLAINTIFF-OPHELIA DE'LONTA
DEFENDANT- JOHNSON
DOCKET NO.            2011
WESTERN DISTRICT
JUDGE ASSIGNED -TURK
DISPOSITION-PENDING

PLAINTIFF- OPHELIA DE'LONTA,

DEFENDANT - FULMORE     DOCKET NO. 1:10cv838
EASTERN DISTRICT - AUGUST 18th 2010
JUDGE ASSIGNED- T.S. ELLIS, III
DISPOSITION - DISMISSED

PLAINTIFF- OPHELIA DE'LONTA,
DEFENDANT - JOHNSON, et. al.
EASTERN DISTRICT- 2007
DOCKET NO. 1:05-cv  1469
JUDGE ASSIGNED -T.S. ELLIS III
DISPOSITION -SETTLEMENT

PLAINTIFF OPHELIA DE'LONTA,
DEFENDANT- PEARSON, et.al.
DOCKET NO. 1:09cv1167
EASTERN DISTRICT - APIRL 23, 2010
JUDGE ASSIGNED -T.S. ELLIS III
DISPOSITION- DEFAULT JUDGMENT AWARDED

PLAINTIFF - OPHELIA DE'LONTA,
DEFENDANT - JOHNSON et. al.
DOCKET NO. -            2011
JUDGE ASSIGNED TURK
DISPOSITION -PENDING

5. Result of appeal: **Pending** _____

_____

D.   If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [ ] No [ ]

If your answer is YES:   What steps did you take?

_____

E.   If you answer is NO, explain why you did not submit your complaint to the prison authorities.

_____

## IV.   STATEMENT OF CLAIM:

[State here as briefly as possible the facts of your case. Describe how each defendant is involved and how you were harmed by their actions. Also include the names of any other persons involved, dates and places of events. You may cite constitutional amendments you allege were violated, but do not give any legal arguments or cite any cases or statutes.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph. (Attach additional sheets if necessary.)]

**SEE ATTACHMENT**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## V.  RELIEF

I understand that in a section 1983 action, the Court cannot change my sentence, release me from custody or restore good time.  I understand I should file a petition for a writ of habeas corpus if I desire this type of relief.  _____ O+) _____ [please initial]

The plaintiff wants the Court to: [check the remedies you seek]

**XXXX**___  award money damages in the amount of $__**SEE ATTACHMENT**_____

_____  grant injunctive relief by _____

_____  Other _____

## VI.  PLACES OF INCARCERATION

Please list the institutions at which you were incarcerated during the last six months.  If you were transferred during this period, list the date(s) of transfer.  Provide an address for each institution.

Buckingham Corr. Ctr.            P.O.Box 430
                                 Dillwyn va 23936
_____

_____

_____

## VII.  CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE: The parties are advised of their right, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

Do you consent to proceed before a U.S. Magistrate Judge: Yes [x] No [ ].  You may consent at any time; however, an early consent is encouraged.

## VIII.  SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself of herself.

Signed this _4th_ day of _October_, _2011_

Plaintiff _____

IN FORMA PAUPERIS AFFIDAVIT

I hereby apply for leave to proceed with this complaint without prepayment of fees or costs or giving security therefore.  In support of my application, I state under oath that the following facts are true:

1.    I am the plaintiff in this complaint, and I believe that I am entitled to redress.

2.    I am unable to prepay the costs of said action or give security therefore, because:
      **N/A**
      _____
      _____
      _____

3.    I have no assets or funds which could be used to prepay the loan or costs except:
      **N/A**
      _____
      _____
      _____

(Write "none" above if you have nothing; otherwise, list your assets)

_____
Signature of Plaintiff

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on this 4ᵗʰ day of October, 2011

_____
Signature of Plaintiff

IT IS NO LONGER NECESSARY TO HAVE YOUR PETITION NOTARIZED.

CERTIFICATE

I hereby certify that the petitioner herein has the sum of $____.0_____ on account too his credit at the penal institution where he is confined.  I further certify that the petitioner, likewise has the following sureties to his credit according to the records of said penal institution.

_____
_____
_____

_____
Authorized Officer of Penal
Institution

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

OPHELIA AZRIEL DE'LONTA,                )
                                        )
              Plaintiff,                )
                                        )
v.                                      )      Case No. 7:11·CV·00483
                                        )
Harold CLARKE, Director, VADOC;         )
G.K. Washington, Regional Admin.;       )
Larry Edmonds, Warden, BKCC;            )
C. Davis, Major, Chief of Security,     )
BKCC; Davis, Institutional In-          )
vestigator, BKCC; Agent Watson,         )
Internal Affairs Unit, VADOC; Lisa      )
Lang, Staff Psychologist, BKCC;         )
Sarah Pruitt, Correctional Officer,     )
BKCC;                                   )
                                        )
              Defendant.                )

## N A T U R E   O F   T H I S   A C T I O N

        This is a civil rights action under U.S.C. § 1983, arising out
of the deprivation, under color of state law, of rights secured by
the Constitution of the United States;  alleging cruel and unusual
punishment, under the Prison Rape Elimination Act of 2003, 42 U.S.C.
§ 15609 Sexual Assault "Prison Rape," and denial of due process,
deliberate indifference, supervisory liability in violation of the
Eighth and Fourteenth Amendments to the Constitution of the United
States, which mandates equal protection under the law; IX of the
Education Amendment of 1972, which prohibits sexual harassment in
education programs or activities that receive federal funds.

## J U R I S D I C T I O N

1.  The court has jurisdiction over the plaintiff's claims

-2-

of violation of federal constitutional rights under 42 U.S.C. §§ 1331 (1) and 1343.

2.  The court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

<u>P A R T I E S</u>

3.  The plaintiff, OPHELIA AZRIEL DE'LONTA, was incarcerated at Buckingham Correctional Center facility during the events described in this compliant.

4.  Defendant, Harold Clarke, is the director for the Department of Corrections, Virginia, and is in charge of and generally responsible for overall operation procedures of the Virginia Department of Corrections.

5.  Defendant, Gerald K. Washington, was at all times relevant hereto, Regional Director, Central Regional Office for Virginia Department of Corrections and final policy maker.

6.  Defendant, Larry Edmonds, was, at all times relevant hereto, the Warden of Buckingham Correctional Center, of Virginia Department of Corrections, and is a final policy maker.

7.  Defendant, C. Davis, was, at all times relevant hereto, Major, Chief of Security of Buckingham Correctional Center.  Major Davis was also a member of De'lonta's treatment team, and is a final policy maker.

8.  Defendant, Davis, was, at all times relevant hereto, Institutional Investigator, Buckingham Correctional Center of the Virginia Department of Corrections.

9.  Defendant, Watson, was, at all times relevant hereto, Special Agent, Internal Affairs Unit, and Special Agent at Buckingham

-3-

Correctional Center.

10.   Defendant, Lisa Lang, was, at all times relevant hereto, a staff psychologist and member of De'lonta's treatment team, as De'lonta's primary therapist for Gender Indentity Disorder (GID).

11.   Defendant, Sarah Pruitt, was, at all times relevant hereto, a correctional officer at Buckingham Correctional Center of the Virginia Department of Corrections.

12.   All defendants herein are sued in their individual and official capacities.

### S T A T E M E N T   O F   F A C T S

Plaintiff, Ophelia Azriel De'lonta, is a pre-operative, transgender female, who is serving a 73-year sentence within the possibility of parole for bank robbery.

Plaintiff asserts that she receives hormone therapy and psychological counseling.  Plaintiff has undergone various proced-ures to enhance her feminine features, including dermabrasions and a chemical face peel.  She also receives estrogen treatment to slow hair growth, soften her skin, and has significant breast develope-ment as well as other feminine characteristics.

Based upon the following facts heretofore, as a result, a civil action claim was settled (330 F.3d 630, 4th Cir., 2003).  The Virginia Department of Corrections, has continued to provide plain-tiff with inadequate and limited treatment.  Whereas, the defendants were aware of the aforesaid treatment, the effects upon plaintiff, and other relevant circumstances.

Sarah Pruitt's first encounter with plaintiff occurred in April of 2010, when plaintiff was housed at Buckingham Correctional Center

-4-

(N-building, Cell N3/409).

Plaintiff was advised by defendant, Pruitt, that she remembered her when she was housed at another facility, Nottoway Correctional Center. For which defendant stated: "I used to watch you all the time." This was plaintiff's first encounter with defendant at Buckingham Correctional Center.

Defendant then began watching plaintiff's cell on N-3 pod during the month of April of 2010. Defendant was thereafter off from duty for a few days. Immediately upon her return to work, however, defendant sought out plaintiff at her cell (N3/409), telling her that she had a girlfriend to stay at her home, and that her girlfriend brought some eggs, which defendant explained she ate.

Defendant went to say that the eggs were spoiled and caused defendant food poisoning, which was diagnosed by a doctor, after suffering diarrhea and nausea. Defendant stated to plaintiff that after she was better, she went to "straighten" the girlfriend. Defendant stated that she would "fuck her girlfriend's ass up" if she did "that type of shit again". Defendant was making a point to stress toward plaintiff that she doesn't like it when people cross her. Point was made clear to plaintiff.

Sometime in April of 2010, defendant advised plaintiff to submit a request to plaintiff's psychologist stating that she wanted defendant to be her contact liaison. (This would allow defendant to keep a close proximity to plaintiff.)

On occasion, at Buckingham Correctional Center (N3/409), defendant came to plaintiff's cell door during the month of April of 2010, and slipped a black colored underwire bra and black colored lace nylon's into the cell sink of plaintiff, stating: "I think

you will like these."  On another occasion, defendant would
verbally reprimand other inmates from talking to plaintiff.
Defendant would state, "get away from her..." in additon to other
comments related to plaintiff.

   The Institutional Log Book would establish when defendant
would be assigned to a tower.  Defendant would then flash the
tower spot light once she saw when plaintiff would be coming out
of her housing unit.  Defendant would open the tower window and
yell out things which included, "I'll be inside the compound
after lunch."  At other times, plaintiff would receive messages
from Officer Carter, who would tell plaintiff things like, "You're
friend asked about you; she wanted to know how you were doing,
and that she will be back next week," etc.

   On July 30, 2010, plaintiff went out for surgery.  When she
returned, November 2, 2010, plaintiff was re-assigned to another
building on the compound (B-building, cell 114).

   Whereas, on or about February and March of 2010, defendant,
on different occasions, sexually fondled plaintiff in a deliberate
and forceful manner by groping plaintiff's breast, and groped and
squeezed the sexual organ (penis) of plaintiff, despite the pro-
tests of plaintiff.  Defendant stated: "I will make it work."
Also, she stated: "Your breast are nice and perky," as she groped
them.

   Defendant would then make it her mission to come to B1/114
(plaintiff's cell) even when she was not assigned to that building.
Defendant would tell plaintiff how good plaintiff's body looked,
and that she was on her way home..."so be good and remember that
you're not alone."

Plaintiff alleged on each occasion, between the month of February and March of 2010, defendant would come to plaintiff's cell door unexpected.  Plaintiff would suffer extreme emotional pain from defendant's groping (physically), sleep deprivation and on-going emotional destress from defendant's continous unwantton attention.

On another occasion, in March of 2011, while plaintiff was housed in B1/113, defendant came to plaintiff's cell while she was sleeping.  Defendant then entered inside plaintiff's cell, stating: "You lied to me; why didn't you come to lunch!?"

Thereafter, on another occasion in March of 2011, plaintiff was inside cell B1/113, attempting to elude defendant, when defendant went to summon the Building Sergeant, Sgt. Webber (female), by stating that she needed to  check on plaintiff.

Sgt. Webber came to plaintiff's cell with defendant, also unexpected.  Sgt. Webber asked plaintiff what was wrong, because she was not acting like herself.  Plaintiff informed Sgt. Webber that she was not feeling well.  Sgt. Webber encouraged her to get up.  Plaintiff advised Sgt. Webber she needed her razor from out of the control booth.  Sgt. Webber indicated "okay."  When plaintiff looked out her cell door shortly thereafter, defendant was coming back to plaintiff's door with razor in hand.  She then came inside plaintiff's cell while she was at the sink using the razor. All the while, defendant used this time to sexually fondle and grope plaintiff's breast.

Plaintiff states that on or about mid February of 2011, defendant enlightened plaintiff that "someone" unknown to plaintiff,

would be contacting her (i.e. plaintiff).  Plaintiff inquired as
to why and for what reason?  Defendant stated: "I have friends
and family <u>everywhere</u>".  Within a few days later, after that
conversation, plaintiff received a letter from defendant's friend
who lives in Merherrin, Virginia.  (Consequently the return address
indicated a Virginia residence.  The letter actually established
just what the defendant had indicated of having family and friends
within Virginia.)

Buckingham Correctional Center (BKCC) Accounting Department
can confirm defendnat had also sent plaintiff money in the amount
of twenty dollars ($20.00).  This was sent through her friend,
allegedly known as Ralph Mayo, of Merherrin, Virginia.  Facility
records would pinpoint the date, the amount of money, and from whom
the mony was provided.

Defendant would approach plaintiff on what is called the
institutional boulevard (and other wherabouts) or wherever plaintiff
may be.  This was in order to conversate with plainitff.

Defendant got extremely upset with plaintiff on or about the
month of March of 2011, berating, demeaning her for alledgedly
talking to two other female officers (Correctional Officer (C/O)
J. Branch and Correctional Officer C/O Stovall), concerning plain-
tiff's sexual preferences.

Defendant asserts that that she attempted to inform defendant
on several occasions that she was not interested in a female
relationship, and never talked to these two other above-named
officer's.

Defendant had threatened plaintiff by stating, "you better
not be lying to me, and don't talk to those other female officers,"

-8-

because they told defendant they had talked to plaintiff all the
time about her sexual preferences.

Plaintiff puts forth that on April 13, 2011, due to experien-
cing tremendous stress by the defendant, with constant bereavement
and mental demoralizing torture by defendant, this caused plaintiff
extreme depression, which was inflicted by the actions of the defendant.

Whereas plaintiff sought the assistance from her psychologist,
Ms. Lisa Lang, shortly thereafter plaintiff's mental break.

Based on what plaintiff had been enduring at the hands of
defendant, as well as the sexual assault by defendant, plaintiff
knew this was the proper course to take.

Plaintiff also asserts that Ms. Lang informed the Chief of
Security for Buckingham Correctional Center, Major Davis, who
then contacted Internal Affairs, Special Agent Watson.  (Whereas
Agent Watson swore out a statement concerning the defendant who
is in this case).

It should be noted that Agent Watson, Internal Affairs,
refused to meet with plaintiff.  Agent Watson stated that plaintiff
only "wanted a transfer relating to another matter."

On April 13, 2011, Warden Edmonds ordered plaintiff to be
placed into Administrative Segregation (Ad-Seg) housing unit, dur-
ing such time of the investigation, allowing defendant continued
employment and re-assigned to another post (D-Building).  Plaintiff
would question why defendant, an employee of the Virginia Depart-
ment of Corrections, would be allowed to have contact with other
inmates during the course of this investigation, while plaintiff
is suffering from prolonged isolation in Ad-Seg?

Plaintiff was released from Ad-Seg with the stipulation that once defendant returned to work from "medical sick leave," plaintiff would <u>return</u> to segregation until completion of the investigation.

Plaintiff would assert as facts that during sometime between February of 2011, and early March of 2011, she made it her intention to inform Investigator Davis and Chief of Security, Major Davis, that she had been experiencing problems with staff, but before plaintiff had the opportunity to explain herself, she was advised that neither party aforementioned wanted to hear anything or know about anything that's going on with plaintiff. Also, during the month of February and March of 2011, plaintiff spoke with her staff psychologist, Ms. Lisa Lang, on a weekly basis. At that time, plaintiff expressed the problem she was having with on of the security staff. Plaintiff was fearful of informing to her psychologist about what was going and who specifically was involved, because Ms. Lang would thereinafter inform the Chief of Security, Major Davis.

Due to the Major already stating that he did not want to hear what plaintiff had to say, plaintiff didn't feel comfortable informing Ms. Lang who was sexually abusing her.

During mid March of 2011, plaintiff wrote the Director of the Virginia Department of Corrections, Mr. Harold Clarke. Plaintiff explained that she was having serious problems with a security staff member. Unfortunately, however, Director Clarke's response was not directed at the serious matter at hand, but rather about plainitff's compulsion to self-surgery.

Plaintiff also assert's that she informed Agent Watson, Internal Affairs (VDOC), on April 13, 2011, that defendant had

-10-

enlisted the aid of Officer Carter (male), Officer Stovall (female), and Officer Branch (female) in her manipulation and control over plainitff, based upon defendant's own sexual gratification.  In addition to this, plaintiff also establishes that she has turned over several letters to Agent Watson composed by defendant's friend who conspired with defendant in her quest to manipulate and control plaintiff.

The aforementioned correctional officers presently remained within immediate contact of defendant throughout the duration of the investigation.

## C L A I M S   F O R   R E L I E F

A prisoner who has been subjected to sexual misconduct in prison may have a claim or cause of action pursuant to:

1) Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment, 2) the Fourteenth Amendment of the United States Constitution, which mandates equal protection under the law, and 3) the Education Amendment of 1972, which prohibits sexual harassment in educational programs or activities that receive federal funds.

## E L E M E N T S   O F   C L A I M S

Defendant SARAH PRUITT.

1) Plaintiff submits that defendant Pruitt violated plaintiff's Eighth Amendment rights as well as the Prison Elimination Act of 2003 (42 U.S.C. § 15609, and state law Code of Virginia § 18.2-61), which, protected by the U.S. Constitution by means of any sexual

-11-

assault/abuse, intimidation, threats, upon plaintiff, as stated
above.  Further, that defendnant Pruitt violated such rights by
sexual fondling plaintiff through the exploitation of fear and
threats, causing plaintiff to suffer extreme physical and mental
anguish as a result of the aforesaid.  2) Plaintiff asserts that
Correctional Officer Pruitt committed all the aforesaid violations
to plaintiff's rights while acting under color of state law as
an employee of the Virginia Department of Corrections.
Defendant HAROLD CLARKE.

     Plainitff submits that defendant Clarke violated plaintiff's
Eighth Amendment and Fourteenth Amendment rights protected by the
U.S. Constitution, by failing to properly discharge his duty
of adopting and inforcing implementation of the Prison Rape
Elimination Act of 2003 (42 U.S.C. § 15609), to ensure all his
subordinates completed employee and volunteer training of the
Prison Elimination Act.  4) Despite defendant's actual knowledge
of a break down in proper workings of the department, he should
have known the substantial risk of serious harm to prisoners like
plaintiff.

     The Prison Rape Elimination Act (PREA) 2003, which lists
transgender prisoners within the catagory of "potentially vulner-
able prisoners," that require special attention and monitoring.

     5)  With the continue of state-wide sexual abuse thorugh the
Virginia Department of Corrections, are committed and continue to
be committed by his subordinates (see Exhibit A).

     6)  Plaintiff has been sexually assaulted twice within the
Virginia Department of Corrections prisons, that has been docum-
ented and known by all defendant herein named.  (See Delonta v. Pearson.)

-12-

7)  Defendant Clarke's indifferent attitude was inadequate and resulted in the deliberate indifference to a tacit authorization of alledged sexual assault practices of his subordinates.

8)  With the knowledge of such sexual abuse within the Virginia Department of Corrections, there was an affirmative causual link between Clarke's inadequate training, which, violated plaintiff's Eighth Amendment rights, causing her to be subjected to cruel and unusual punishment by Correctional Officer Sarah Pruitt, subordinate of Director Harold Clarke, defendant.

9)  Defendant's failed to carry out prison policies, and, it is the Director's (Clarke) responsibility to implement procedures that would protect inmates from sexual assault/abuse from employee's on inmates.

Defendant G. K. WASHINGTON.

10)  Regional Director, G.K. Washington, failure to properly perform his duties resulted in plaintiff suffering extreme mental and physical anguish, by knowingly being aware of an obvious, substantial risk to plaintiff, due to knowingly that plaintiff had been sexual assaulted by a Correctional Officer, who was terminated; and who was sexually assaulted by an inmate while plaintiff was housed at Powatan Correctional Center (previous to Buckingham Correctional Center).  11)  Defendant Washington knew of or should have known of the alledged allegations of defendant Pruitt for violation of Standard's of Conduct, as well as rules of conduct governing employee's relationships with offenders.  Hence, this put plainitff and other inmates at a substantial risk for serious harm while housed at Buckingham Correctional Center.

Defendant LARRY EDMONDS.

11) Warden, Buckingham Correctional Center, Larry Edmonds, violated my Eighth Amendment right to be free from cruel and unusual punishment. Warden Edmonds knew of plaintiff's prior sexual assault, which occurred at Powhatan Correctional Center.

12) Warden Edmonds was aware, and had actual knowledge of a serious problematic issues involving sexual misconduct between his staff and inmates.

13) Warden Edmonds was fully aware of the circumstances of plaintiff being transferred to Buckingham Correctional Center. Most importantly, that the plaintiff had sufferred a previous sexual assault at Powhatan Correctional Center.

14) However, Warden Edmonds recklessly disregaurded the substantial risk to serious harm plaintiff faced by not ensuring that all of his subordinates completed the Employee & Volunteer training mandated for all employees, per The Prison Rape Elimination Act of 2003.

15) Warden Edmonds failed to follow supervisory responsibility upon receiving a report of abuse. By not immediately removing defendant Pruitt from her current post and re-assigning her to another post that would not allow any offender contact, Edmonds endangered not only the plaintiff, but other offenders as well. (Warden Edmonds continued to allow Pruitt continued contact with offenders, as well as allow her to carry firearms in the commission of some of those duties.)

16) Warden Edmonds, having sufficient culpable state of mond, posed a substantial risk of harm as he recklessly disregaurded proper

-14-

protocol and therefore violated plaintiff's due process afforded by the Fourteenth Amendment of the United States Constitution.

Defendant C. DAVIS.

17) Major Davis, Chief of Security, Buckingham Correctional Center, failed to properly perform his duties by knowingly putting plaintiff at substantial risk to harm and abuse.  This resulted in  the  plaintiff suffering continued abuse and extreme mental anquish and physical debilitation resulting from the sexual assault at the hands of defendant Pruitt.

18) Major Davis failed to follow supervisory responsibility after receiving a report of the abuse.  By not removing defendant Pruitt to another post with further offender contact.

19)  As Chief of Security, defendant Major Davis has a legal duty to ensure that evry employee under his care receive the mand-ated training per the Prison Rape Elimination Act of 2003.

20)  Defendant Major Davis, with sufficient culpable state of mind, posed a substantial risk of serious harm, with reckless disregaurd, violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.


## D E L I B E R A T E   I N D I F F E R E N C E

Defendant Pruitt's sexual misconduct, with threat's of physical harm, violated the Eighth Amendment to the United States Constitution, and subjected plaintiff to cruel and unusual punish-ment.

I.  UNDER COLOR OF STATE LAW

The Virginia Department of Corrections (VDOC) is itself a product of state law.  The organization and governance of state

correctional facilities, such as Buckingham Correctional Center,
is codified under Code of Virginia, Title's §§ 53.1 through 67.8,
"Discipline of Prisoners".  This is one of the enumerated, general
purposes of state correctional facilities (see Code of Virginia,
§ 53.1-32 (A)).  The VDOC achieves this purpose through employment
of correctional officer's, such as defendant Pruitt.

In addition, the Supreme Court has long recognized that "under
color of state law," includes the "misuse of power possessed by
virtue of state law and made possible only because the wrongdoer is
clothed with the authority of state law.  Defendant Pruitt's actions
were certainly an abuse of the power and authority she held over
plaintiff and which was made possible by her employment as a correct-
ional officer by the Commonwealth.

## II.  DEPRIVATION OF EIGHTH AMENDMENT RIGHT AS SECURED BY THE CONSTITUTION

"The unnecessary and unwanton infliction of pain...constitutes
cruel and unusual punishment forbidden by the Eighth Amendment.
What is necessary to establish an unnecessary unwanton infliction
of pain varies according to the nature of the alledged constitutional
violation."

The question whether the measure taken inflicted unnecessary
pain and suffering ultimately turns on whether force was applied
in a good faith effort to maintain or restore discipline or mal-
iciously and sadistically for the very purpose of causing harm.

Pruitt's sexual assault of plaintiff was unjustified.  Not
only was it the kind of assault that could not reasonably be deemed
necessary even in the midst of a disciplinary action or encounter;
but Pruitt deliberately chose the most painful manner in which to do it.

Her chosen method of assault was meant to inflict physical and emotional pain.  Being sexual in nature, and targeting plaintiff's genitalia, the assault was not only physically painful, but held emotional implications unique to plaintiff, who suffers from Gender Identity Disorder.

It was also designed (as any force to the male genitalia would be), to cause as much harm and physical pain as possible and to disable plaintiff; to hurt, harm, and threaten and overpower plaintiff, not only in the present, but permanently thereafter.

This attack, therefore, was a paradigmatic example of abuse of power by a correctional officer over an inmate-using violence, threats and force, "just because she can," in order to maintain a control over the inmate for the officer's personal enjoyment, and, in this case, sexual gratification.

Viewed through the lens prescribed by the Supreme Court, this Court could only characterize Pruitt's attack of plaintiff as "malicious and sadistic," violating all contemporary standards of decency and being repugnant to the conscience of the court.

III.  INJURY

As a direct result of this unprovoked, unwarranted, intentional and deliberate malicious sexual assault, perpetrated on plaintiff by Officer Pruitt, plaintiff suffered and continues to suffer both physical pain (from the very forceful squeezing of her privates) and emotional anguish, which continues to manifest itself and has developed into long term psychological problems, such as Post-Tramatic-Stress-Disorder (PTSD), as well as depression, suicidal idealation, Complex—Post-Tramatic-Stress-Disorder (CPTSD), as well as severe psychological harm stemming from prolonged, repeated

-17-

trauma.  In addition to that, shame, fear, anxiety, tension, an
exaggerated, startled response, coupled with anger, impaired
memory and concentration, and/or rapid mood swings.


### DENIAL OF DUE PROCESS AND DENIAL OF EQUAL PROTECTION
### IN VIOLATION OF THE FOURTEENTH AMENDMENT

On June 2, 2011, Warden Edmonds determined that the sexual
assault complained of by De'lonta was "unfounded" in Grievance Log
Number #11-Reg-00095.

However the grievance also stated that the Administration
was unable to substantiate the validity of the allegations.

De'lonta was denied her due process rights when Warden Edmonds
pre-determined the grievance "unfounded," and clearly states later
that the investigation was not yet complete  (SEE EXHIBIT B).

Per Operating Procedure 038.3, sexually abusive behavior
prevention and intervention (page 7) is the supervisor's respons-
ibilityafter receiving a report of abuse.  The "administrative duty
officer shall immediately initiate necessary action to protect
all physical evidence; ensuring the victim is escorted to the facility
medical unit as soon as possible to provide appropriate treatment,
per Local Operating Procedure 720.7.

De'lonta was never escorted to the medical unit here at
Buckingham Correctional Center, nor examined after the physical
abuse she suffered by Officer S. Pruitt, who forcefully fondled,
squeezed and molested De'lonta's private parts.

As a result, De'lonta continues to suffer pain in her private
area regulary.

The facility head is also supposed to ensure follow-up medical

-18-

treatment or mental health services and ensure the victim is trans-
ported to the local hospital for further treatment, examination,
documentation, and referral for counseling, if warranted.

After plaintiff's interview with Agent Watson on April 13,
2011, concerning the sexual assault and abuse by Correctional
Officer Pruitt, De'lonta was not transported to the local hospital
for treatment, examination, yet she was immediately taken to seg-
regation, where she remained without counseling or treatment for
thirty (30) days.

If the alleged perpetrator is an employee, he or she shall
be re-assigned to a post with no further offender contact; suspended,
or placed on pre-disciplinary leave with pay based on the circum-
stances or situation, pending completion of an investigation.

Officer Pruitt was still assigned to D-Building, working in
the pod living quarters, with full offender contact until her
"medical leave" date came up.

Once Officer Pruitt returned to work, she occasionally worked
in the offender mail room, where she had access and handled plain-
tiff's incoming and outgoing mail.

De'lonta informed psychologist Lang, that there was two offender
witnesses that Agent Watson needs to interview concerning them
observing Officer Pruitt's abusive actions towards De'lonta.

Psychologist Lang informed Agent Watson about the two offenders:

a)  Ali-Bey #114594 and

b) C. Mann  #1084902

Agent Watson interviewed offender Ali-Bey, but did not
interview offender C. Mann.

-19-

De'lonta was called by Agent Watson on June 11, 2011, for a
follow-up of the investigation.  De'lonta asked Agent Watson had
he interviewed offender C. Mann.  Agent Watson stated "no," not
yet, but that he would.

Unfortunately, however, on July 29, 2011, De'lonta received
her grievance back (thereby exhausting all Administrative remedies).
The response stated, in part: "Per the Special Investigations Unit,
an investigation into your allegations revealed that there was no
evidence to support your claim that you were touched in a sexual
manner by Officer Pruitt.  As a result, I find no violation of
policy."

Per policy and procedure of the Virginia Department of Correct-
ions, all offenders are afforded due process rights.  Per United
States Constitution for equal protection of the law, also affords
due process.

De'lonta was denied these due process rights to a fair, equal
investigation to her claims, with all witnesses interviewed.  By
all witnesses failing to be interviewed by Agent Watson, this, in
turn failed to to provide adequate service he was sworn to uphold
as an officer of the court.

Agent Watson also confiscated female undergarments from De'lonta,
however, per Operating Procedure 802.1, confiscated personal prop-
erty must be accompanied by a Notification of Confiscation Form.
Agent Watson failed to follow Operating Procedure 802.1, thus
violating De'lonta's clear due process rights.

-20-

R E L I E F   R E Q U E S T E D

WHEREFORE, plaintiff requests that the Court grant the following relief:

1.  Issue a Declaratory Judgment stating:

a)  The sexual abuse of plaintiff, De'lonta, by defendant S. Pruitt, violated plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted an Assault & Battery under state law.

b)  Defendant Clarke's failure to take appropriate action to curb the sexual abuse of prisoners violated plaintiff's rights under state law.

c)  The actions of defendant, Agent Watson, in conducting plaintiff's sexual abuse allegations, along with defendants C. Davis and D. M. Davis' subsequent actions sustaining it, violated plaintiff's rights under the due process clause of the Fourteenth Amendment to the United States Constitution.

d)  Defendants C. Davis, L. Lang, L. Edmonds and Watson, by failing to take action to provide adequate medical care for the plaintiff violated the plaintiff's rights under the Eighth Amendment to the United States Constitution (and continue to do so at this current time).

2.  Issue an Injunction Ordering Defendants Clarke, Edmonds, Watson and Lang, or their Agents to:

a)  Immediately arrange for the plaintiff to be examined by urologist for the continued, chronic pain she suffers from.

b)  Immediately arrange for the plaintiff's need for counseling

or other follow-up medical treatment to be evaluated by a medical practioner with the expertise in the treatment and restoration and function following a sexual assault.

c)  Carry out, without delay, the treatment so ordered and directed by such medical practioner.

### 3.  Issue an Injunction Ordering Defendant Clarke to Transfer Plaintiff to Butner, North Carolina Medical Facility

NOTE:  Butner, N.C. facility is specially equiped to care for transgender, incarcerated inmates.

### 4.  Award Compensatory Damages in the Following Amounts:

a)  One-hundred thousand dollars ($100,000.00) jointly and severely against defendants Edmonds, Watson, C. Davis, D. M. Davis, and Pruitt, for the cruel and unusual punishment (including deprivation of liberty and amenity) and emotional injury resulting from thier denial of due process in connection with plaintiff's sexual abuse investgation complaint.

b)  One-hundred thousand dollars ($100,000.00) jointly and severely against defendants, Clarke, Washington, Edmonds, C. Davis, D. M. Davis, Watson, Lang and Pruitt, for the physical and emotional injuries sustained as a result of plaintiff's sexual assault.

c)  Fifty-thousand dollars ($50,000.00) jointly and severely against defendants Edmonds, Agent Watson, C. Davis, and Lang, for the physical and emotional injury resulting from their failure to provide adequate medical care to plaintiff.

### 5.  Award Punitive Damages in the Following Amounts:

a)  Fifty-thousand dollars ($50,000.00) each against defendants Clarke, Edmonds, Washington, C. Davis, D.M. Davis, Watson and Lang.

-22-

b)   One-hundred thousand dollars ($100,000.00) against defendant S. Pruitt

**6.   <u>Grant Such Relief as it May Appear Plaintiff is Entitled.</u>**


Dated : October 4th 2011


Respectfully Submitted,

Ophelia Azriel De'lonta

#1014174

Buckingham Correctional Center

P.O. Box 430

Dillwyn Va 23936


### VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, I believe them to be true I certify under penalty of perjury that the foregoing is true and correct.


Executed at Dillwyn, Virginia  on October 4th 2011

Ophelia Azreil De'lonta

Ophelia De'lonta #1014174
P.O.Box 430
Dillwyn, Va 23936

CLERK OF COURTS
UNITED STATES DISTRICT COURT
P.O.BOX 1234
ROANOKE, VIRGINIA 24006



