CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 1 2012

JULIA C. DUDLEY, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| OPHELIA AZRIEL DE'LONTA ) | |
| ) | Civil Action No. 7:11-cv-00483 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. James C. Turk |
| HAROLD CLARKE, et al., ) | |
| ) | Senior United States District Judge |
| Defendants. ) | |

This matter is presently before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 20), Defendants' Motion for Protective Order (Dkt. No. 31), and Plaintiff's Motion to Compel (Dkt. No. 39). The Defendants' motions are brought on behalf of all Defendants except Sarah Pruitt, who is separately represented.[1]

Plaintiff, Ophelia De'lonta, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that Defendants failed to follow training requirements mandated by the Prison Rape Elimination Act, failed to protect her from sexual assault by a prison guard, failed to provide her with proper medical care after she reported the assault, and violated her due process rights in various ways throughout the investigation of the alleged abuse.

In response, Defendants have filed a Motion for Summary Judgment, raising qualified immunity as a defense, and have also filed a Motion for Protective Order seeking a stay of discovery until the question of qualified immunity is resolved. Plaintiff has responded to the Motion for Summary Judgment after the Court gave notice under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The matter is now ripe for disposition. For the reasons that follow, the Court

---

[1] The Court does not discuss claims against Pruitt in this Memorandum Opinion.

1

will grant the Motion for Summary Judgment based on qualified immunity as to Plaintiff's § 1983 claims seeking monetary damages and will grant the Motion for Protective Order. Specifically, the Court grants summary judgment on the Plaintiff's failure to train claims against Clarke, Edmonds, and C. Davis; the failure to protect claims against Clarke and Washington; the failure to protect claims against Edmonds and C. Davis; the failure to provide medical care claim as to Edmonds, C. Davis, Watson, and Lang; and all of the due process claims. The Court dismisses Plaintiff's claims for declaratory and injunctive relief against these Defendants under 28 U.S.C. § 11915(e)(2)(b) for failure to state a claim. Thus, the only claims remaining in the case are Plaintiff's claims against Sarah Pruitt.

## I.   FACTS

In March 2010, Ophelia De'lonta,[2] a pre-operative transsexual housed in the Virginia Department of Corrections ("VDOC") prison system, was first transferred to the Buckingham Correctional Center ("BKCC") after she alleged a prison guard at Powhatan Correctional Center ("PCC") had abused her. See De'Lonta v. Pearson, No. 1:09CV1167, 2011 WL 795934 (E.D. Va. Feb. 24, 2011). Her transfer followed a meeting between then-Assistant Attorney General William Muse and senior VDOC officials where her claims of abuse were allegedly discussed. Soon after arriving at BKCC, Plaintiff met Officer Sarah Pruitt, a prison guard who allegedly remembered Plaintiff from a previous facility. To put it briefly, Plaintiff alleges that around February and March of 2011 Sarah Pruitt "sexually fondled" Plaintiff's breast "in a deliberate and forceful manner" and "groped and squeezed" Plaintiff's penis.[3] In March 2011, Plaintiff

---

[2] Although previous cases involving De'lonta spell her last name with a capital L, the complaint spells it with a lower case L.
[3] There is some inconsistency in the Complaint about the dates of the alleged abuse. On pages five and six of the Complaint, the Plaintiff alleges the abuse occurred in February and March of 2010, but on pages six through eight, she alleges the abuse occurred in February and March of 2011. Because the Plaintiff reported the abuse on April 13, 2011 but was not transferred to BKCC until March 2010, the Court assumes the abuse allegedly occurred in 2011.

2

allegedly wrote a letter to VDOC director Howard Clarke informing him that she was having "serious problems with a security staff member," but his reply was unresponsive to the abuse, instead addressing her compulsion to self-surgery. Compl. at 9.

Plaintiff finally reported the alleged abuse to her psychologist, Defendant Lang, on April 13, 2011. Plaintiff then had an interview with Defendant Special Agent Watson, who performed the investigation, with minimal assistance from Defendant Davis, an institutional investigator. Plaintiff alleges that Watson and Davis violated her due process rights in the investigation by not interviewing witnesses that she said had pertinent information. She also alleges that after she reported the abuse, she was escorted directly to administrative segregation (to protect her from further contact with Officer Pruitt) and was denied medical care despite the physical and emotional pain connected to the sexual abuse.

Plaintiff also brings a due process claim based on allegations that Agent Watson failed to fill out the required confiscation form when seizing female undergarments from Plaintiff.

## II. LEGAL STANDARDS

The Defendants have raised qualified immunity as an affirmative defense, entitling them to summary judgment. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206. If the Court determines that the facts alleged, taken in the light most favorable to the Plaintiff, do not show that the officer's conduct

violated a constitutional right, then the Defendants are entitled to summary judgment without further discussion of qualified immunity. Id. at 201.

Defendants further argue that they are entitled to a protective order against discovery because they have raised a defense of qualified immunity in their pending dispositive motion. They seek a protective order against discovery until the Court rules on the threshold issue of qualified immunity. See Siegert v. Gilley, 500 U.S. 226, 232-33 (1991); Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Under Siegert and Harlow, the district court, upon a motion for summary judgment, should not require defendants to respond to discovery requests until deciding the threshold qualified immunity question.

## III.  EIGHTH AMENDMENT CLAIMS

To state a cause of action under §1983, a plaintiff must allege that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). To properly allege a Section 1983 claim against a state official under the Eighth Amendment, a plaintiff must demonstrate that (1) the alleged conduct is "objectively, sufficiently serious"; and (2) that the prison official was "deliberately indifferent to the plaintiff's rights, health or safety" and had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

> A prison official shows deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety.

4

Odom v. S. Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003) (internal citations omitted).

To properly state a claim upon which relief can be granted, Plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the Plaintiff to articulate facts, when accepted as true, that 'show' that the Plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft, 556 U.S. at 678).

### A. Failure to Train – Clarke, Edmonds, C. Davis

De'lonta asserts claims against Defendants Clarke (Director of VDOC), Edmonds (Warden of BKCC), and C. Davis (Chief of Security) for failure to provide the training required by the Prison Rape Elimination Act, 42 U.S.C. §§ 15601–15609 (2006) ("PREA").

Under the first prong of the qualified immunity analysis, the Court must determine if the Plaintiff's allegations state a claim that Defendants' conduct violated Plaintiff's constitutional or statutory rights. Plaintiff alleges that the Defendants' failure to properly conduct PREA-mandated training is a violation of her Eighth Amendment rights and thus is actionable under Section 1983.[4] But not every violation of federal law "give[s] rise to a civil rights claim pursuant to section 1983. This is because section 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

---

[4] Contrary to the Plaintiff's assertion, the PREA does not "list transgender prisoners within the [category] of 'potentially vulnerable prisoners,'" though Farmer v. Brennan, 511 U.S. 825, 848–49 (1994), recognized that transgender prisoners face a heightened risk of sexual abuse in the general population of a male prison.

Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. See Ball v. Beckworth, No. CV 11-00037, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue . . . . The statute does not grant prisoners any specific rights." Chinnici v. Edwards, No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). Thus, Plaintiff fails to state a § 1983 claim based on an alleged violation of the PREA training requirements. Accord Rivera v. Drake, No. 09-CV-1182, 2010 WL 1172602 (E.D. Wis. Mar. 23, 2010); Law v. Whitson, No. 2:08-CV-0291, 2009 WL 5029564 (E.D. Cal. Dec. 15, 2009); Inscoe v. Yates, No. 1:08-CV-001588, 2009 WL 3617810 (E.D. Cal. Oct. 28, 2009).

Because Plaintiff has not stated a claim that Defendants violated her constitutional or statutory rights related to the PREA, Defendants are entitled to qualified immunity under the first Saucier prong. 533 U.S. at 206. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's failure to train claims.

### B. Failure to Protect – Clarke and Washington

Plaintiff also alleges claims against Defendants Clarke and Washington for failing to protect her from the sexual abuse she allegedly suffered at the hands of Officer Pruitt. Defendants Clarke and Washington are the director and regional director of VDOC, respectively. As previously discussed, to the extent the Plaintiff relies on a failure to provide PREA-mandated training as the basis for her failure to protect claim, her claims are subject to dismissal since PREA violations cannot form the basis for a § 1983 claim. The Plaintiff, however, does not rely exclusively on PREA as the basis for her failure to protect claims, but also asserts claims based

on Clarke's and Washington's failure to prevent alleged sexual abuse despite alleged personal knowledge of a specific risk to the Plaintiff.

Under the first prong of the qualified immunity analysis, the Court must determine if the Plaintiff's allegations state a claim that Defendants' alleged conduct violated a constitutional or statutory right. To avoid the application of qualified immunity on a failure to protect claim, a Plaintiff must allege that she was subject to conditions that posed a substantial risk of serious harm, and that prison officials were actually aware of and disregarded that risk. Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Parrish *ex rel.* Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("In making this assessment, it is important to remember that to cross the threshold from mere negligence to conscience-shocking deliberate indifference, the officers not only must recognize the facts giving rise to the risk, but they also must draw the additional causal inference."). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Odom v. S. Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003) (internal citations omitted). "[O]fficials can be liable under the deliberate indifference standard only to the extent that they actually appreciate the risk factors in a given case, and only to the extent they make the causal inference that the circumstances as they perceived them created a substantial risk of serious harm." Parrish, 372 F.3d at 304.

Plaintiff alleges that Defendant Clarke was aware that Plaintiff was at risk of assault in two general ways and three specific ways. Generally, Clarke was allegedly aware that a widespread problem of sexual abuse existed in the VDOC system and that transgender prisoners are a class of prisoners susceptible to sexual abuse. Specifically, Plaintiff alleges that Clarke was personally aware that Plaintiff has been sexually assaulted twice within VDOC due to the fact

that the abuse was "documented" in a court case in which Clarke was not a defendant. See De'Lonta v. Pearson, No. 1:09CV1167, 2011 WL 795934 (E.D. Va. Feb. 24, 2011). Plaintiff further alleges that Clarke attended a meeting in March 2010 with then-Assistant Attorney General Muse in which the reason for Plaintiff's transfer to BKCC (sexual abuse by staff) was discussed, and that she wrote a letter to Clarke in mid-March 2011 informing him "she was having serious problems with a staff member." In spite of this personal knowledge, she alleges that Clarke did nothing to protect her from the threat of abuse from a prison guard at BKCC.

Plaintiff alleges that Washington was also aware that she had been previously sexually assaulted by an inmate and by a correctional officer at PCC by virtue of the previous lawsuit, that Washington also attended the meeting in March 2010 with Muse, and that he "knew of or should have known of" that Plaintiff was at risk of abuse by Officer Pruitt.

De'lonta fails to allege sufficient facts underlying her failure to protect claim against Defendants Clarke and Washington to survive summary judgment based on qualified immunity. It is implausible that these two Defendants, as the director and regional director of VDOC, would gather personal awareness from a court case in which they were not defendants, from which they would know of specific risks to Plaintiff at BKCC.

Plaintiff relies on the March 2011 letter to Clarke to support her claim that he acted with deliberate indifference. However, the Complaint fails to allege that she told him that a staff member was sexually assaulting her, just that "she was having serious problems with a security staff member." In response, Clarke sent a letter about Plaintiff's self-surgery compulsion. These statements do not sufficiently allege that Clarke recognized the "facts giving rise to the risk," Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004), that a female guard at BKCC would sexually assault Plaintiff. The quoted language from the letter could not put Clarke on

notice that a staff member was sexually abusing Plaintiff. Furthermore, Clarke's response about self-surgery is further evidence that Clarke did not actually disregard the information Plaintiff provided or draw an inference from the stated facts that Plaintiff was at risk of sexual assault by staff at BKCC. There is no plausible allegation that Clarke was "aware of the distinct risk" Plaintiff allegedly faced at BKCC, id. at 306, or that Clarke knew of "a specific risk distinct from the general risk[] of which the officer[ was] aware." Id. Accordingly, the March 2011 letter is insufficient to adequately support a constitutional claim that Clarke failed to protect Plaintiff.

Plaintiff also alleges that these two defendants attended a March 2010 meeting in which the attendees discussed Plaintiff's abuse by a staff member at PCC, which precipitated the transfer to BKCC. Even if both defendants were at the meeting and were aware a staff member sexually abused Plaintiff, officials "may be found free from liability if they responded reasonably" to a perceived risk. Farmer v. Brennan, 511 U.S. 825, 844 (1994). It is uncontroverted that because of the meeting, Plaintiff was subsequently transferred to BKCC and the staff member allegedly responsible for the abuse at PCC was terminated for fraternization. See Dkt. No. 24, Ex. 1 at 3. Due to the reasonableness of this response, Plaintiff cannot rely on this meeting as sufficient evidence that officials failed to protect her from a different assailant at a different facility, with no other specific knowledge of other risks.

Construing the evidence in the light most favorable to the Plaintiff, the Court concludes that summary judgment based on qualified immunity should be granted to Defendants Clarke and Washington on the failure to protect claim because the Plaintiff has not sufficiently alleged facts that overcome the high burden required to state a deliberate indifference claim. Thus, her claims fail under the first Saucier element and Defendants are entitled to qualified immunity. 533 U.S. at 206.

### C. Failure to Protect – Edmonds, C. Davis

Plaintiff further alleges that Edmonds and Davis violated the Eighth Amendment by failing to remove Officer Pruitt from offender contact during the pendency of the sexual abuse investigation. However, Plaintiff has not alleged that Officer Pruitt continued to work in contact with her personally. To the extent Plaintiff seeks to pursue claims on behalf of the other prisoners that were allegedly in danger because of continued contact with Officer Pruitt, she lacks standing to do so. See Davis v. Scott, 176 F.3d 805, 807 (4th Cir. 1999). To the extent she alleges that Defendants' actions violated state law or administrative procedure, such violations do not constitute Eighth or Fourteenth Amendment violations. See Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990); Davis v. Scherer, 468 U.S. 183, 191-94 (1984) ("A defendant's violation of a state law or regulation is generally irrelevant to the decision of qualified immunity."). Therefore, the Court grants summary judgment based on qualified immunity in favor of Defendants Edmonds and C. Davis as to this failure to protect claim under Saucier's first prong. 533 U.S. at 206.

### D. Failure to Provide Medical Care – Edmonds, C. Davis, Watson, Lang

Plaintiff alleges that after she reported the sexual abuse on April 13, 2011, she was escorted directly to administrative segregation and was not given medical treatment.

Medical treatment claims under Section 1983 fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment on a failure to provide medical care claim, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76

10

(4th Cir. 2001) (citations omitted). "[A] serious . . . medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).

    The Plaintiff fails to allege that she informed officials of the pain the assault allegedly caused or that she asked prison officials for medical treatment on April 13, 2011 or at any time thereafter. She merely alleges that Defendants' actions violated administrative regulations[5] because they failed to ensure that she received medical care as soon as possible. Again, violations of administrative procedures are not actionable under the Eighth Amendment. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990); Davis v. Scherer, 468 U.S. 183, 191–94 (1984). While such a violation can serve as evidence of deliberate indifference, see Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008), in this case it is insufficient. Even if Plaintiff had alleged that she had asked for medical treatment, the alleged failure to provide treatment still does not state a claim. This is because the medical need was not sufficiently serious from the view of the Defendants on April 13, 2011.

    Plaintiff alleges that the abuse, fondling and squeezing of her breast and penis, occurred in February and March of 2011. The report of the alleged abuse did not occur until April 13, 2011, at least two weeks after any instance of abuse. Even if Plaintiff had requested medical care, she fails to allege that Defendants knew she had a need for medical treatment on April 13. In other words, it was not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241. There were no fluids that could be gathered from the victim, as would be the situation in a rape case. Bruising, or any other physical evidence of the assault, would likely not still be visible at that time, at least two weeks after the most recent

---

[5] Local Operating Procedure 720.7 allegedly mandates immediate medical treatment for abuse victims.

alleged abuse. Absent information from the Plaintiff about a specific need for medical care, Defendants, all non-medical personnel, would not recognize a clear need for medical treatment. Thus, Plaintiff fails to allege facts stating a claim that Defendants "actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575–76 (4th Cir. 2001) (citation omitted). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Edmonds, C. Davis, Watson, and Lang on the failure to provide medical care claim and these Defendants are entitled to qualified immunity under the first element of Saucier. 533 U.S. at 206. Therefore, the Court grants summary judgment on this ground.

## IV.   FOURTEENTH AMENDMENT CLAIMS

Construing her complaint liberally, Plaintiff alleges that Defendants have violated three liberty interests and one property interest. The Court grants summary judgment in favor of Defendants as to all claims on the ground of qualified immunity, because none sufficiently alleges deprivation of a constitutionally protected liberty or property interest.

The liberty interest claims fault the ensuing investigation after the allegation of abuse against Officer Pruitt. The first claim is against Watson for failure to interview an inmate that the Plaintiff identified as having helpful information, the second is against Warden Edmonds for prejudging Plaintiff's grievance, and the third is against Davis for sustaining a flawed investigation. To prevail on her Section 1983 claim that Defendants violated her procedural due process rights, the Plaintiff must prove that (1) she had a protected liberty interest and (2) that interest was adversely affected by the actions of the Defendants without the protections of due process guaranteed by the Fourteenth Amendment. Slezak v. Evatt, 21 F.3d 590, 593 (4th Cir. 1994).

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state prison's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Under these principles, Plaintiff's allegations fail to state a constitutional due process claim. Since Plaintiff does not have a constitutional right to a grievance procedure, she cannot have a constitutional right that the grievance procedure or investigations of particular inmate complaints are conducted in any particular way. These three liberty interest due process claims are mere complaints about the method by which the investigation was conducted and therefore must fail.

Plaintiff's property interest claim, against Watson for confiscating her female undergarments without filling out the form required by prison regulations, does not allege a property interest.[6] Even if the Defendants failed to follow prison procedures, the violation of the claimed regulations do not rise to the level of constitutional violations. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990); Davis v. Scherer, 468 U.S. 183, 191–94 (1984).

Therefore, the Court grants summary judgment based on qualified immunity on the due process claims against Defendants Watson, Edmonds, and Davis because the Plaintiff has failed to state a constitutional claim. See Saucier, 533 U.S. at 206.

## V. CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

---

[6] Moreover, "negligent [or] intentional...deprivation[s] of property by a state employee do[ ] not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Even when an official confiscates the inmate's property pursuant to an official policy, the inmate has no constitutional due process claim if post-deprivation remedies provided adequate protection of the property interest at issue. See Zinermon v. Burch, 494 U.S. 113, 128 (1990). Plaintiff has alleged no facts suggesting that post-deprivation remedies available to her at the prison were inadequate to protect her property interests under the circumstances she alleges.

Qualified immunity does not bar claims for declaratory and injunctive relief. <u>Lefemine v. Wideman</u>, 672 F.3d 292, 303 (4th Cir. 2012) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."). However, for the reasons cited above, Plaintiff's allegations against the moving Defendants fail to state any claim actionable under § 1983.[7] Therefore, the court dismisses Plaintiff's claims against these Defendants for injunctive or declaratory relief, pursuant to 28 U.S.C. § 1915(e)(2)(b).[8]

## VI.   CONCLUSION

Based on the foregoing, the Court grants summary judgment on the ground of qualified immunity in favor of the moving Defendants on the claims for monetary damages under § 1983: Plaintiff's failure to train claims against Clarke, Edmonds, and C. Davis; the failure to protect claims against Clarke and Washington; the failure to protect claims against Edmonds and C. Davis; the failure to provide medical care claim as to Edmonds, C. Davis, Watson, and Lang; and all of the due process claims. To the extent that Plaintiff seeks injunctive or declaratory relief related to these claims, the Court dismisses such claims under § 1915(e)(2)(b) for failure to state a claim, and dismisses any related state law claims without prejudice under § 1367(c). Finally, the Court grants Defendants' Motion for Protective Order. The claims against Sarah Pruitt remain pending before the Court.

ENTER: This 11th day of September, 2012.

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge

---

[7] To the extent that Plaintiff brings claims under state law, the court declines to exercise supplemental jurisdiction over such claims and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c).
[8] Under § 1915(e)(2)(b), the court may summarily dismiss an action filed in forma pauperis "at any time if the court determines . . . that the action . . . fails to state a claim on which relief may be granted."