CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 14 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| OPHELIA AZRIEL DE'LONTA | ) | |
| | ) | Civil Action No. 7:11-cv-00483 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. James C. Turk |
| HAROLD CLARKE, et al., | ) | |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

This matter is presently before the Court on Defendant[1] Sarah Pruitt's Motion for Summary Judgment. ECF No. 57. Plaintiff, a pre-operative transsexual[2] housed in the Virginia Department of Corrections ("VDOC") prison system, alleges that Sarah Pruitt, a prison guard, sexually abused her. Pruitt asserts qualified immunity as grounds upon which summary judgment should be granted. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment.

I.  FACTS

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008).[3] Plaintiff Ophelia De'lonta ("De'lonta" or "Plaintiff") was transferred to Buckingham Correctional Center ("BKCC") in April 2010, a facility for male inmates. Soon after arriving at BKCC, Plaintiff encountered Officer Sarah Pruitt

---

[1] In her Complaint, De'lonta also named as Defendants various prison officials. The Court dismissed all claims against the separately-represented Defendants. See ECF Nos. 55 & 56. Pruitt is the only remaining Defendant in the case.

[2] "Plaintiff has undergone various procedures to enhance her feminine features, including dermabrasions and a chemical face peel. She also receives estrogen treatment to slow hair growth, soften her skin, and has significant breast developement [sic] as well as other feminine characteristics." ECF No. 1, Compl. at 10.

[3] In any event, Pruitt has not offered a differing set of facts.

1

("Pruitt" or "Defendant"), a prison guard who first met Plaintiff at a previous VDOC facility. At that time, Pruitt told De'lonta that at the previous facility, "I used to watch you all the time." ECF No. 1, Compl. at 11. Shortly after, Pruitt returned to work after a few days off and related to De'lonta that Pruitt's girlfriend had caused Pruitt to suffer from food poisoning by cooking her spoiled eggs. After Pruitt recovered, she told De'lonta that "she went to 'straighten' the girlfriend," and would "'f--- her girlfriend's ass up' if she did 'that type of sh-- again.'" Id. The purpose of this conversation was to communicate to De'lonta that Pruitt "doesn't like it when people cross her." Id.

Also during April 2010, Pruitt "advised" De'lonta to submit a request that Pruitt be named her "contact liaison," which would allow Pruitt to "keep a close proximity to Plaintiff." Id. Around the same time, Pruitt illicitly delivered a black bra and black lace nylons to De'lonta, stating, "I think you will like these."[4] Id. at 11-12. At various times from April 2010 to July 30, 2010, Pruitt verbally reprimanded other inmates who were talking to De'lonta and told them to "get away from her." Id. at 12. Various other interactions occurred until De'lonta went out for surgery on July 30, 2010. Id.

Upon her return on November 2, 2010, De'lonta was reassigned to another building, away from Pruitt's assignment. Pruitt "[made] it her mission to come to" De'lonta's cell, telling De'lonta how good her body looked and telling her that she was not alone. Id. In March 2011, Pruitt woke up De'lonta in her cell and questioned her accusatorially, "You lied to me; why didn't you come to lunch?" Id. at 13. Also in March 2011, Pruitt threatened De'lonta when Pruitt thought that De'lonta had talked to two other prison guards about De'lonta's sexual orientation.

---

[4] The Court notes some inconsistency in the record as to how De'lonta acquired the bra and panties. When they were confiscated, her explanation was that she had purchased them through mail order while at a previous facility and they were in her possession when she arrived at BKCC. See ECF No. 21-5 at 4-8.

2

Id. Pruitt told De'lonta, "You better not be lying to me, and don't talk to those other female officers." Id.

On two or perhaps three occasions in February and March of 2011, Pruitt came to De'lonta's cell unexpectedly and "sexually fondled" Plaintiff's breasts "in a deliberate and forceful manner" and "groped and squeezed" Plaintiff's penis.[5] Id. Plaintiff did not consent to this fondling and groping. Id. During the abuse, Pruitt told De'lonta that "I will make it work" and "Your breast are [sic] nice and perky."[6] Id. at 12. These instances of abuse caused De'lonta physical pain from the forceful squeezing of her private parts, extreme emotional pain and distress, and sleep deprivation. Id. at 13; see also id. at 23-24 (alleging ongoing pain from the abuse). De'lonta alleges that she suffered unique "emotional implications" from the abuse as a transsexual who suffers from Gender Identity Disorder.[7] Id. at 23.

Based on this alleged sexual abuse, Plaintiff sued Pruitt under 42 U.S.C. § 1983, alleging violations of her Eighth Amendment rights, as well as her rights under the Prison Rape Elimination Act, 42 U.S.C. §§ 15601–15609 (2006) ("PREA").

## II.   LEGAL STANDARD

Pruitt has raised qualified immunity as an affirmative defense, entitling her to summary judgment. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."

---

[5] There is some inconsistency in the Complaint about the dates of the alleged abuse. On pages five and six of the Complaint, the Plaintiff alleges the abuse occurred in February and March of 2010, but on pages six through eight, she alleges the abuse occurred in February and March of 2011. Because the Plaintiff was not transferred to BKCC until April 2010 and De'lonta reported the abuse on April 13, 2011, the Court assumes the alleged abuse occurred in February and March 2011, not February and March 2010.

[6] It is unclear if Pruitt allegedly fondled one breast or both. The Complaint at some points discusses the object(s) of the fondling in the singular, ECF No. 1, Compl. at 12-13, but at other times uses plural indicators such as "them," id. at 12, or "Your breast *are* nice and perky." Id. (emphasis added). Taking the factual assertions in the light most favorable to the Plaintiff, the Court assumes that she alleges Pruitt fondled both breasts.

[7] Gender Identity Disorder is "[a] strong and persistent cross-gender identification, which is the desire to be, or the insistence that one is, of the other sex." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR 576 (2000).

Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendant's conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 201. If the Court determines that the facts alleged, taken in the light most favorable to the Plaintiff, do not show that the officer's conduct violated a constitutional right, then the Defendant is entitled to summary judgment without further discussion of qualified immunity. Id. at 201.

### III. ANALYSIS

#### A. Prison Rape Elimination Act Claim

Liberally construing the Complaint, Plaintiff seeks relief under § 1983 for Pruitt's violations of the PREA. Assuming Pruitt violated the PREA when she allegedly sexually abused De'lonta, there is no basis in law for a private cause of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. See Ball v. Beckworth, No. CV 11-00037, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a

commission to study the issue. . . . The statute does not grant prisoners any specific rights." Chinnici v. Edwards, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). Thus, Plaintiff fails to state a § 1983 claim based on an alleged violation of the PREA. Accord Rivera v. Drake, No. 09-CV-1182, 2010 WL 1172602 (E.D. Wis. Mar. 23, 2010); Law v. Whitson, No. 2:08-CV-0291, 2009 WL 5029564 (E.D. Cal. Dec. 15, 2009); Inscoe v. Yates, No. 1:08-CV-001588, 2009 WL 3617810 (E.D. Cal. Oct. 28, 2009).

Because Plaintiff cannot show that Pruitt violated her constitutional or statutory rights under the PREA, Pruitt is entitled to qualified immunity under the first Saucier prong. 533 U.S. at 206. Accordingly, the Court **GRANTS** the Defendant's Motion for Summary Judgment on Plaintiff's PREA claim.

### B. Eighth Amendment Claim

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). In her § 1983 claim, Plaintiff alleges that Pruitt subjected her to cruel and unusual punishment in violation of her Eighth Amendment rights while acting under the color of state law.[8] In response, Pruitt claims that she is entitled to qualified immunity.

The first prong of the qualified immunity analysis is whether—in the light most favorable to Plaintiff—Plaintiff alleges that Pruitt undertook conduct that violated Plaintiff's constitutional rights. Saucier, 533 U.S. at 201. In a § 1983 claim against a state official under the Eighth

---

[8] In a somewhat confusing passage in the Complaint, Plaintiff cites the Virginia criminal rape statute. "Plaintiff submits that defendant Pruitt violated plaintiff's Eighth Amendment rights as well as the Prison Elimination Act of 2003 (42 U.S.C. § 15609, and state law Code of Virginia § 18.2-61), which, protected by the U.S. Constitution by means of any sexual assault/abuse, intimidation, threats, upon plaintiff, as stated above." ECF No. 1, Compl. at 17-18. Liberally construing the Complaint, the Court interprets this reference to the rape statute as relating to Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment rather than asserting a separate claim under the Virginia criminal rape statute. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Amendment, a plaintiff must demonstrate that (1) the alleged conduct is "objectively, sufficiently serious"; and (2) that the prison official was "deliberately indifferent to the plaintiff's rights, health or safety" and had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As to the first prong of the qualified immunity test, it is undisputed in the case law that sexual abuse by a prison guard on an inmate may violate the Eighth Amendment. See Woodford v. Ngo, 548 U.S. 81, 118 (2006) (Breyer, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."); Farmer, 511 U.S. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal citation omitted); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply 'offensive to human dignity.'") (citing Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991)); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."); see also Roten v. McDonald, No. CIV.A. 08-081-JJF, 2009 WL 4348367, at *4 (D. Del. Nov. 30, 2009) (citing cases), aff'd, 394 F. App'x 836 (3d Cir. 2010).

Courts have recognized, however, that not every allegation of sexual abuse is "objectively, sufficiently serious" for purposes of the Eighth Amendment. See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) ("[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."); Boddie, 105 F.3d at 861 ("[I]solated episodes of harassment and touching ... are despicable. ... But they do not involve a harm of federal constitutional

6

proportions as defined by the Supreme Court.") (citing Farmer, 511 U.S. at 833-34).[9] Instead, courts must conduct a fact-intensive, case-by-case inquiry to determine if the sexual abuse was sufficiently serious.

On the facts of the case at bar and consistent with the analysis of other courts, the Court concludes that Pruitt's alleged sexual abuse of De'lonta is "objectively, sufficiently serious" for purposes of the Eighth Amendment. The overwhelming majority of cases with factual situations roughly analogous to De'lonta's have found an Eighth Amendment violation. See, e.g., Wood v. Beauclair, 692 F.3d 1041, 1049-51 (9th Cir. 2012) (allegations that guard "stroked" prisoner's nude penis for a few seconds for guard's own gratification satisfied objective and subjective elements of Eighth Amendment claim); Washington v. Hively, 695 F.3d 641, 642 (7th Cir. 2012) (finding actionable constitutional claim based on detainee's allegation that a "guard spent five to seven seconds gratuitously fondling the plaintiff's testicles and penis through the plaintiff's clothing and then while strip searching him fondled his nude testicles for two or three seconds")[10]; Calhoun v. DeTella, 319 F.3d 936, 939-940 (7th Cir. 2003) (allegation that during a strip search guards "made 'sexual ribald comments,' forced [inmate] to perform 'provocative acts,' and 'pointed their sticks towards his anal area' while he bent over" with no allegation of physical injury, stated an Eighth Amendment claim); Schwenk, 204 F.3d at 1196-98 (inmate stated Eighth Amendment claim where guard repeatedly requested oral sex, groped inmate's

---

[9] There appears to be an emerging division in the judicial treatment of cases in which an inmate alleges a prison guard sexually abused him or her. One class of cases focuses on the language in Boddie that limits Eighth Amendment claims to sexual abuse that is "severe or repetitive," 105 F.3d at 861, and another class focuses more on "contemporary standards of decency" and the complete lack of penological justification for guard-on-inmate sexual abuse. See, e.g., Wood v. Beauclair, 692 F.3d 1041, 1050-51 (9th Cir. 2012); Jacobs v. Durko, No. 04-1941, 2007 WL 2769436, at *3-4 (W.D. Pa. Sept. 17, 2007); Bromell v. Idaho Dep't of Corr., No. 05-419, 2006 WL 3197157, at *4 (D. Idaho Oct. 31, 2006). The Court need not address this division since De'lonta's allegations of abuse state an Eighth Amendment claim under either standard.

[10] Hively analyzed the detainee's rights under the Fourteenth Amendment, rather than the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 545 (1979) (the Due Process Clause protections are at least as great as those under the Eighth Amendment). The Hively court also noted that "[a]n unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." (citing other cases). 695 F.3d at 643.

buttocks, exposed his genitals to inmate, and forcibly pressed his exposed penis into the inmate's clothed buttocks); Berry v. Oswalt, 143 F.3d 1127, 1133 (8th Cir. 1998) (finding sufficient evidence to support an Eighth Amendment violation when guard attempted to perform non-routine patdown searches on female inmate, propositioned her for sex, intruded upon her when she was not fully dressed, and repeatedly made sexual comments to her); Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992) (allegations that guard performed invasive patdown searches almost daily for two months, in which guard conducted "a deliberate examination of the genital, anus, lower stomach and thigh areas," were sufficient to survive summary judgment on inmate's § 1983 claim); Jacobs v. Durko, No. 04-1941, 2007 WL 2769436, at *3-4 (W.D. Pa. Sept. 17, 2007) (allegations that guard "roughly" groped an inmate's buttocks and genitals on a single occasion, not in the course of a patdown search and without any justification, may be sufficiently serious for Eighth Amendment purposes); Bromell v. Idaho Dep't of Corr., No. 05-419, 2006 WL 3197157, at *4 (D. Idaho Oct. 31, 2006) (allegation that guard approached inmate from behind, placed his penis against inmate's clothed buttocks, then squeezed the inmate's pectoral muscles before squeezing the inmate's presumably clothed genitals, states a claim under the Eighth Amendment, observing that "uninvited sexual contact that is done maliciously and sadistically to cause harm and that does not advance any legitimate security interest is the type of conduct that is 'inconsistent with contemporary standards of decency' and, therefore, violates the Eighth Amendment"); Morris v. Eversley, 205 F. Supp. 2d 234, 242-43 (S.D.N.Y. 2002) (denying qualified immunity where female inmate alleged that a male guard entered her cell at night and "sexually assaulted" her and that such conduct was part of an ongoing pattern and practice of male officers engaging in sexual contact with female inmates); Thomas v. Dist. of Columbia, 887 F. Supp. 1, at *3, *4–5 (D.D.C. 1995) (allegation that guard twice forcibly

touched or attempted to touch inmate's penis, sexually harassed inmate, and spread rumors that the plaintiff "is a homosexual and a 'snitch'" was sufficiently serious); Ojo v. Hillsborough Cnty. Dep't of Corr., No. 12-CV-204-SM, 2012 WL 4513944, at *2-3 (D.N.H. Sept. 25, 2012) report and recommendation approved, No. 12-CV-204-SM, 2012 WL 4514005, *1 (D.N.H. Oct. 2, 2012) (allegations that guards intentionally "grabbed" an inmate's penis and/or testicles during a patdown search on four occasions stated a claim (under the Fourteenth Amendment, as the inmate was a pretrial detainee)).[11]

De'lonta has alleged, and Pruitt has not rebutted, that Pruitt made sexual and threatening remarks over the course of a year. This period culminated with at least two instances of fondling De'lonta's breasts and groping and squeezing her penis. De'lonta has alleged serious ongoing physical and emotional pain from the incident, emotional pain allegedly made more acute by the fact that De'lonta suffers from Gender Identity Disorder. The alleged abuse was both severe *and* repetitive. See Boddie, 105 F.3d at 861 ("[T]here can be no doubt that severe *or* repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation.") (emphasis added). As such, Pruitt's alleged conduct qualifies as sufficiently serious even under the higher standard embodied in the Boddie line of

---

[11] The following cases in the Boddie line are distinguishable from De'lonta's factual allegations. Jackson v. Madery, 158 F. App'x 656, 661-62 (6th Cir. 2005) (allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Joseph v. United States Fed. Bureau of Prisons, 232 F.3d 901, at *1-2 (10th Cir. 2000) (table opinion) (no Eighth Amendment violation stated where inmate alleged guard "touched him several times in a suggestive manner and exposed her breasts to him"); Boddie, 105 F.3d at 861 (a female guard squeezing a male inmate's hand, "touching" his penis, and pressing against his body with her full body, combined with sexually suggestive remarks, is not sufficiently serious); Garcia v. Watts, No. 08-Civ.-7778, 2009 WL 2777085, at *7 (S.D.N.Y. Sept. 1, 2009) (two instances of the guard rubbing his presumably clothed penis against inmate's clothed buttocks, along with several inappropriate comments and an unauthorized cell search, were not sufficiently serious for purposes of the Eighth Amendment); Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *1, *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks); Montero v. Crusie, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) ("several" instances of squeezing of an inmate's penis, with no allegation of injury, is not sufficiently serious).

cases. See supra n. 8. De'lonta's allegations certainly survive summary judgment under the more lenient standard followed by the Ninth Circuit in Wood, 692 F.3d at 1050-51.

The Court also concludes that De'lonta has alleged facts on which the factfinder could determine that Pruitt acted with a "sufficiently culpable state of mind." "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Boddie, 105 F.3d at 861. In cases of sexual abuse or rape, "the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). The court cannot conceive of any legitimate law enforcement or penological purpose behind Pruitt's alleged sexual and threatening comments, let alone the instances of fondling and groping. The second element of the Eighth Amendment standard is therefore satisfied, which in turn satisfies the first element of the qualified immunity test.

Under the second element of the qualified immunity test, the Court must determine if the right was clearly established at the time of Defendant's actions. Saucier, 533 U.S. at 201. The purpose of this inquiry, and qualified immunity more generally, is to "ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier, 520 U.S. 259, 270 (1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). With the facts alleged, qualified immunity does not shield Pruitt from liability for her sexual abuse of De'lonta. See Schwenk, 204 F.3d at 1197. ("Thus, the shield that qualified immunity provides is limited to

those officials who are either unaware of the risk or who take reasonable measures to counter it. Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers *no* shield."); see also id. ("In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise."); Turner v. Huibregtse, 421 F. Supp. 2d 1149, 1152-53 (W.D. Wis. 2006) (denying qualified immunity to guards who allegedly touched inmate's buttocks and fondled his penis).

Furthermore, Pruitt's alleged actions fall within the definition of "rape" in the Prison Rape Elimination Act of 2003, see 42 U.S.C. § 15609 ("The term 'rape' means the carnal knowledge, oral sodomy, sexual assault with an object, or *sexual fondling of a person*, forcibly or against that person's will . . . .") (emphasis added),[12] and are criminally proscribed by Va. Code Ann. § 18.2-67.4. ("An accused is guilty of sexual battery if he sexually abuses, as defined in § 18.2-67.10 . . . (ii) an inmate who has been committed to jail or convicted and sentenced to confinement in a state or local correctional facility or regional jail, and the accused is an employee or contractual employee of, or a volunteer with, the state or local correctional facility or regional jail; is in a position of authority over the inmate; and knows that the inmate is under the jurisdiction of the state or local correctional facility or regional jail . . . ."). The Court thus concludes that De'lonta's rights not to be sexually abused by a prison guard were sufficiently well-established in February and March of 2011.

Pruitt makes two points in support of the argument that her actions are shielded by qualified immunity: (1) she "was not charged with any criminal offense involving sexual assault

---

[12] Warden Edmonds, the warden of BKCC at the time De'lonta alleges she was sexually abused, also avers in his affidavit that "All staff, both security and administrative staff, including myself, receive annual in-service training including required instruction on the Prison Rape Elimination Act." ECF No. 21-3, Edmond Aff. ¶ 9.

or sexual battery"; and (2) the internal prison investigation deemed De'lonta's claims "unfounded." ECF No. 58, Mem. Support of Def.'s M. Summ. J. at 4. Neither of these arguments are responsive to the issue before the Court: the potential application of qualified immunity to De'lonta's allegations of sexual abuse. Pruitt offers no reasons why these two factors make the alleged constitutional violation any more or less serious or De'lonta's rights not to be sexually abused any more or less established. Therefore, the Court need not address them.

## IV. CONCLUSION

Pruitt's alleged actions—making sexual and threatening comments along with at least two instances of fondling De'lonta's breasts and groping De'lonta's penis, which caused De'lonta ongoing pain—are not shielded by qualified immunity. These actions are sufficiently serious for purposes of the Eighth Amendment and Pruitt acted with a sufficiently culpable state of mind. No reasonable person could have thought in March 2011 that the law permitted a prison guard to fondle and grope an inmate's breasts and penis. Therefore, the Motion for Summary Judgment is **DENIED** as to Plaintiff's Eighth Amendment Claim. Because, however, there is no private right of action to enforce a violation of the Prison Rape Elimination Act, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's PREA claim.

ENTER: This 14th day of January, 2013.

Hon. James C. Turk
Senior United States District Judge